UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY WAYNE HUGHES, and APRIL NICHOLE GRIZZARD, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>REGULATORY DATACORP, INC., and BUREAU VAN DIJK ELECTRONIC PUBLISHING, INC.,<br><br>Defendants. | C.A. NO.<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

### I.  PRELIMINARY STATEMENT

1. This is a consumer class action based upon widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA") by Defendants, Regulatory Datacorp, Inc. and Bureau van Dijk Electronic Publishing, Inc.

2. Defendants violate the important protections in the FCRA by improperly associating innocent consumers with the adverse public records or articles, including criminal records and/or government sanctions lists, of known terrorists, narcotics traffickers, money launderers, arms dealers, and other individuals prohibited from doing business in the United States.

3. Defendants compound the harm of this inaccurate and defamatory reporting by hiding it from consumers – when consumers request information from Defendants, they uniformly

1

fail to respond with all information in consumers' files, in violation of the FCRA's disclosure requirements which are foundational to ensuring that consumers can correct inaccuracies.

4. Defendants also prevent consumers from finding out about their reports in the first place, by prohibiting the companies that buy its reports from telling consumers where they obtained the information being used to terminate account access or otherwise take adverse action against them, in violation of the FCRA.

5. Defendants' conduct deprives consumers of their rights under federal law and results in widespread harm.

## II. JURISDICTION & VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331.

7. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and both defendants maintain substantial and systematic contacts within this District.

## III. PARTIES

8. Plaintiff Jeffrey Wayne Hughes is an adult individual who resides in Lawrenceburg, Tennessee.

9. Plaintiff April Nichole Grizzard is an adult individual who resides in Milledgeville, Georgia.

10. Defendant Regulatory Datacorp, Inc. ("RDC") is a consumer reporting agency and Delaware corporation that maintains its principal place of business in this District at 211 South Gulf Road, Suite 125, King of Prussia, PA 19406.

11. Defendant Bureau van Dijk Electronic Publishing, Inc. ("BVD" or "Bureau van Dijk") is a consumer reporting agency and New York corporation that maintains its principal place of business in the United States at 120 N. LaSalle Street, Suite 1700, Chicago, Illinois, 60602.

12. When accessing Defendants' website, a pop-up screen appears which states: "We're pleased to announce that as a result of the acquisition last year, RDC is now part of Bureau van Dijk – and is known as Bureau van Dijk." https://www.bvdinfo.com/en-gb/about-us?ref=rdc (last accessed: November 6, 2023).

13. According to Defendants' website: "RDC became part of Bureau van Dijk in February 2021. We're now united under the Bureau van Dijk brand." https://www.bvdinfo.com/en-gb/about-us?ref=rdc# (last accessed: November 6, 2023).

14. According to Defendants' website: "RDC is now integrated into Bureau van Dijk[.]" https://www.bvdinfo.com/en-gb/about-us?ref=rdc# (last accessed: November 6, 2023).

## IV.  FACTUAL ALLEGATIONS

**A.  RDC and Bureau van Dijk Are Consumer Reporting Agencies.**

15. According to Defendants' website:

> Established in 2002, RDC was formed by a consortium of 20 of the world's leading financial institutions following the September 11 attacks and the enactment of the USA PATRIOT Act.
>
> RDC's roots are in aggregating and leveraging public information to help organisations identify and manage risks relating to money laundering, fraud, corruption, terrorism, organised crime, and other threats.
>
> RDC has continued to collect and categorise relevant risk information in its Grid database and evolving its screening Review capabilities for compliance with global regulations and know-your-customer (KYC) requirements.
>
> Now RDC is united with Bureau van Dijk and together we offer powerful combined solutions:

3

- fast validation and screening of entities and people
- the best entity data, including corporate structures and beneficial ownership
- curated adverse media, and fast, precise screening, that's easy to configure

RDC is now integrated into Bureau van Dijk but it's [sic] legacy and mission remain as relevant and important in this new environment as they were in 2002: together we're united in preventing criminal infiltration of the world's financial systems.

https://www.bvdinfo.com/en-gb/about-us?ref=rdc# (last accessed: November 6, 2023).

16. Defendants do, in fact, regularly engage in aggregating and leveraging information to help organizations, specifically financial institutions, identify and manage risks, specifically those risks associated with lending money to consumers whose information Defendants aggregate and leverage.

17. According to Defendants' website, their products specifically include products for analyzing "credit risk" and providing "detailed reports" about individuals. https://www.bvdinfo.com/en-gb/about-us?ref=rdc# (last accessed: November 6, 2023); https://www.bvdinfo.com/en-gb/solutions-for-your-role/compliance-and-financial-crime (last accessed: November 6, 2023).

18. Defendants regularly provide Capital One Bank (USA), N.A. and/or its affiliated companies consumer reports on individuals so that Capital One Bank, (USA), N.A. may make decisions on whether to extend, or continue to extend, credit to such individuals. Defendants' consumer reports emanate from RDC's office located in King of Prussia, Pennsylvania.

19. Based upon the statements on Defendants' website, Defendants similarly provide such information to other financial institutions for similar purposes.

20. Specifically, Defendants seek to screen account holders or prospective account holders for such financial institutions to assist the financial institutions in making credit decisions

4

not to lend money to those engaged in "money laundering, fraud, corruption, terrorism, organised crime, and other threats."

21. In addition to "credit risk," financial institutions may face penalties under the USA PATRIOT ACT and related regulations if they extend credit to an individual who is prohibited from engaging in the U.S. financial system. *See* 31 C.F.R. § 501 App. A, II (setting forth civil and criminal penalties for extending credit to an individual on the U.S. Department of Treasury's list of Specially Designated Nationals ("SDNs"), including terrorists, drug traffickers, and money launderers"). *See also* U.S. DEP'T OF THE TREASURY, *OFAC FAQs: General Questions*, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited November 6, 2023).

**B.     Defendants' "Credit Risk" Products Are Regulated by Federal Law**

22. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

23. The FCRA covers the transmission of information that bears on the legality of extending credit to the consumer, including the sale of information through products intended for USA PATRIOT ACT compliance. *Cortez*, 617 F.3d at 707-08 (holding that the sale of government watch list information is covered by the FCRA because "[i]t is difficult to imagine an inquiry more central to a consumer's "eligibility" for credit than whether federal law prohibits extending credit to that consumer in the first instance. The applicability of the FCRA is not negated merely because the creditor/dealership could have used the OFAC Screen to comply with the USA PATRIOT Act, as well as deciding whether it was legal to extend credit to the consumer.").

24. The FCRA requires that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

25. The maximum possible accuracy standard "requires more than merely allowing for the *possibility* of accuracy," meaning that CRAs do meet that standard by suggesting that certain consumers are "possible" matches for individuals. *Ramirez v. Trans Union, LLC*, No.12-cv-00632-JSC, 2017 WL 1133161, at *5 (N.D. Cal. Mar. 27, 2017) (quoting *Cortez*, 617 F.3d at 709) (emphasis added).

26. In 2010, the U.S. Court of Appeals for the Third Circuit found in *Cortez* that a CRA acted "reprehensibly" and was in willful violation of FCRA section 1681e(b) by using only first and last name to associate consumers with criminals prohibited from conducting financial transactions in the United States. 617 F.3d at 707-08, 723.

27. Later, a court in the Northern District of California certified the FCRA section 1681e(b) claims of a class of 8,192 individuals whose information had been inaccurately associated with criminals on the same government watch list at issue in *Cortez* by a CRA. *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 413 (N.D. Cal. 2014). A jury found that the CRA's matching procedures willfully violated the FCRA. *Ramirez v. Trans Union, LLC*, No. 3:12-cv-632-JSC, 2017 WL 5153280, at *2-3 (N.D. Cal. Nov. 7, 2017) (upholding jury's verdict).

28. Moreover, CRAs may not shift their duty to assure accuracy onto the users of the information that they sell. *Ramirez*, 2017 WL 1133161, at *4 (*citing* Cortez, 617 F.3d at 708).

C.    **Defendants' Procedures for Attribution and Sale of Adverse Public Records**

22. Defendants are a consumer reporting agency specializing in the sale of consumer reports to financial institutions for the purpose of assisting financial institutions in evaluating credit risks and making decisions as to whether to lend money to consumers.

23. Defendants operate a unified screening business, where the same policies and procedures apply to both, and employees have duties and responsibilities that span both.

24. Defendants are regulated by the FCRA.

25. As part of its screening business, Defendants offer a product which purports to search databases of records of criminal proceedings and other public records bearing on individuals' eligibility for credit, and include the results of such searches on the consumer reports Defendants compile and sell.

26. Defendants' practices for matching information obtained to individuals on the consumer reports they sell are uniform and not unique to each consumer or transaction.

27. In preparing reports, Defendants fail to follow reasonable procedures to assure the maximum possible accuracy of the information they sell about consumers, regularly making inaccurate associations between innocent people and criminals as well as other individuals who are ineligible for credit in the United States.

28. Defendants rely upon wholly inadequate matching procedures to associate individuals who are the subject of their screening reports, regularly placing information on consumer reports using only a name.

29. Defendants intentionally employ procedures that maximize the likelihood that their searches will return a result, which compromises accuracy.

30. Defendants' reporting of adverse public record information is not accidental, but instead a result of deliberately designed policies and procedures.

31. At all relevant times, Defendants' conduct, as well as that of their agents, servants, and/or employees who were acting within the course and scope of their agency or employment and

under the direct supervision and control of Defendants, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiffs.

**D.      Defendants Prevent Consumers From Learning About Their Role In Adverse Actions**

32.     Consumer reporting agencies "may not prohibit a user of a consumer report furnished by the agency on a consumer from disclosing the contents of the report to the consumer, if adverse action against the consumer has been taken by the user based in whole or in part on the report." 15 U.S.C. § 1681e(c); *Meyer v. National Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1100 (N.D. Cal. 2014) (prohibition on disclosure of reports gives rise to FCRA cause of action).

33.     Despite the FCRA's clear statutory language, Defendants as a matter of standardized policy, practice, and procedure prohibit the users of its reports from disclosing the reports to consumers under any circumstances, or even from disclosing to consumers that Defendants provided a report at all.

34.     Consumers thus remain utterly in the dark about Defendants' role in screening process, effectively precluding them from disputing and correcting the harmful and inaccurate information reported to current and prospective creditors.

**E.      Defendants Do Not Disclose to Consumers the Adverse Public Records It Maintains and Sells About Them**

35.     Even in the unlikely event that a consumer learns of Defendants and makes a request for information, Defendants refuse to respond to consumers' requests for information as required by the FCRA.

36.     The FCRA mandates that consumer reporting agencies provide consumers with access to the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their credit files. *See* 15 U.S.C. §§ 1681g(a) and 1681i(a).

37. Specifically, each consumer reporting agency is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial, and in other limited circumstances. *See* 15 U.S.C. § 1681g(a).

38. Companies that compile and sell public records to financial institutions for purposes of establishing an individual's eligibility for credit, including based upon USA PATRIOT ACT compliance concerns, must comply with FCRA section 1681g(a) by responding to consumer file requests. *Cortez*, 617 F.3d at 711-12 (government watch list data intended for USA PATRIOT ACT compliance must be disclosed to consumers upon request).

39. Although Defendants regularly report public record information, including criminal records, to consumers' current or prospective creditors, Defendants will not disclose these records to consumers who request their files as a matter of standardized policy and procedure.

40. Defendants' standardized refusal to respond to requests for information not only deprives consumers of statutorily mandated information that is essential to consumers' ability to ensure that the information being sold about them is complete and accurate, but also prevents them from making disputes pursuant to FCRA section 1681i.

**F.     The Experience of Plaintiff Jeffrey Wayne Hughes**

41. Plaintiff Jeffrey Wayne Hughes ("Hughes") was issued a credit card account from Capital One Bank (USA), N.A.

42. On October 19, 2022, Capital One Bank (USA), N.A. ("Capital One") sent Hughes a letter informing him that his account was being mysteriously closed because "Capital One has discovered adverse past or present legal action involving an individual or entity associated with the account. Unfortunately, it can't be reopened, and we are not able to offer additional information about this decision."

43. In 2009 and 2016, Hughes filed for bankruptcy protection in the Middle District of Tennessee.

44. October 24, 2016, Hughes pled guilty in Lawrence County, Tennessee to one count of theft over $250,000, one count of theft between $10,000 and $60,000, and six counts of money laundering stemming from his work as a treasurer on behalf volunteer fire departments.

45. The most recent bankruptcy proceeding and the criminal conviction, both in 2016, were approximately six years old when Capital One decided to close Mr. Hughes active credit card account.

46. In 2021, Hughes sued the Tennessee Board of Parole in the Tennessee 20th Judicial Circuit Chancery Court, Davidson County, under the Tennessee Reentry Success Act of 2021 regarding its decision to deny him a parole hearing contemporaneously with his release eligibility date.

47. On September 24, 2021, the Honorable Anne C. Martin issued an order granting Hughes's petition for relief and ordering that Hughes be granted a hearing within 60 days of Hughes's release eligibility date.

48. In November, 2021, Hughes received his hearing and parole was recommended.

49. Since winning parole, Plaintiff Hughes has maintained a clean record and works for the State of Tennessee Department of Labor and Workforce Development as a Career Specialist assisting former inmates in reentry into the workforce.

50. Mr. Hughes wanted to know what information Capital One relied upon in making its decision (i.e., whether Capital One was informed of the bankruptcies, the criminal conviction, or his recent successful litigation against the Tennessee Board of Paroles).

51. Capital One refused to identify the Defendants as the source of the information it relied upon.

52. Generally, Capital One will disclose the identity of the consumer reporting agency whose report was used to make credit decisions. However, they do not disclose the identities of the Defendants.

53. Capital One's unique policy not to disclose the identity of the Defendants along with the type of criminal record data Defendants provide indicates Defendants required their role in the consumer credit marketplace remain hidden to protect their ability to provide such information without repercussion from its refusal to follow procedures to assure maximum possible accuracy, and in violation of the FCRA's mandate that CRAs may not prohibit users from disclosing the contents of reports.

54. Hughes only learned the identity of the Defendants as the responsible consumer reporting agency because he discovered a previous lawsuit against these same Defendants in his own investigation.

55. Hughes has the right to know Defendants' role in the closing of his account and what information it supplied to Capital One.

G.   **The Experience of Plaintiff April Nichole Grizzard**

56. Plaintiff April Nichole Grizzard ("Grizzard") was issued a credit card account from Capital One Bank (USA), N.A.

57. In December, 2021, Capital One Bank (USA), N.A. ("Capital One") sent Grizzard a letter informing her that her account was being mysteriously closed because "Capital One has discovered adverse past or present legal action involving an individual or entity associated with the account. Unfortunately, it can't be reopened, and we are not able to offer additional information about this decision."

11

58. In 2008, Grizzard for bankruptcy protection in the Middle District of Georgia.

59. In 2013, Grizzard was indicted in the U.S. District Court for the Eastern District of Louisiana for possession with intent to distribute methamphetamine and conspiring to possess with intent to distribute methamphetamine.

60. Grizzard credits the charges in the Eastern District of Louisiana as the catalyst for her sobriety, pled guilty in 2016, and has rehabilitated and rebuilt her life.

61. Capital One's closure of her account came as a surprise, being several years after her legal proceedings were concluded.

62. Grizzard wanted to know what information Capital One was provided and relied upon in making its decision, as well as when this information was compiled.

63. Knowledge of who provided Capital One information and what it provided would allow Grizzard to assess such information both for its accuracy and completeness, and it would further her ability to engage in the informed use of credit.

64. Capital One refused to identify the Defendants as the source of the information it relied upon.

65. Generally, Capital One will disclose the identity of the consumer reporting agency whose report was used to make credit decisions. However, they do not disclose the identities of the Defendants.

66. Capital One's unique policy not to disclose the identity of the Defendants along with the type of criminal record data Defendants provide indicates Defendants required their role in the consumer credit marketplace remain hidden to protect their ability to provide such information without repercussion from its refusal to follow procedures to assure maximum

possible accuracy, and in violation of the FCRA's mandate that CRAs may not prohibit users from disclosing the contents of reports.

67. Grizzard only learned the identity of the Defendants as the responsible consumer reporting agency because she discovered a previous lawsuit against these same Defendants in the course of her own investigation.

68. Grizzard has the right to know Defendants' role in the closing of her account and what information it supplied to Capital One.

### V.   CLASS ACTION ALLEGATIONS

69. Plaintiffs bring this action on behalf of the following Class:

> **Prohibition on Disclosure Class:** All natural persons residing in the United States and its Territories about whom Defendants responded to an inquiry from one of its customers subscribed to its GRID product with an "alert," during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this case.

70. Plaintiffs reserve the right to amend the definitions of the Class based on discovery or legal developments.

71. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Class are so numerous that joinder of all is impractical. Upon information and belief, the number of consumers harmed by Defendants' practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendants.

72. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individuals. The common legal and factual questions include, among others: (1) whether Defendants prohibit users of its consumer reports

from disclosing the contents of those reports to the consumer about whom the report relates where adverse action has been taken by the user based in whole or in part on the report; and (2) whether Defendants acted willfully or negligently.

73. **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiffs' claims are typical of each Class Member.  Plaintiffs have the same claims for relief that they seek for absent Class Members.

74. **Adequacy**.  **Fed. R. Civ. P. 23(a)(4).**  Plaintiffs are each an adequate representative of the Class because their interests are aligned with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intends to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

75. **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Moreover, Defendants have taken measures to hide their identities as the consumer reporting agency responsible for the reports at issue, and it is unlikely that most class members are even aware of the Defendants' identity. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.

By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI. CAUSES OF ACTION

### COUNT I
### (CLASS CLAIM) All Plaintiffs
### 15 U.S.C. § 1681e(c)

76. Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length here.

77. , Defendants are liable to Plaintiffs and the Class for willfully and negligently violating 15 U.S.C. § 1681e(c) by prohibiting users of its consumer reports from disclosing the contents of those reports to the consumer about whom the report relates where adverse action has been taken by the user based in whole or in part on the report.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

2. An order entering judgment in favor of Plaintiffs and the Class and against Defendants for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

3. An order entering judgment in favor of Plaintiffs and the Class and against Defendants for actual damages pursuant to 15 U.S.C. § 1681o;

4. An order granting costs and reasonable attorneys' fees;

5. An award of pre-judgment and post-judgment interest as provided by law; and

6. Such other relief as the Court deems just and proper.

## TRIAL BY JURY

Plaintiffs hereby request a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: December 18, 2023

By: */s/ James A. Francis*
**FRANCIS MAILMAN SOUMILAS, P.C.**
JAMES A. FRANCIS
JOHN SOUMILAS
LAUREN KW BRENNAN
1600 Market Street, 25th Floor
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

**SKAAR & FEAGLE, LLP**
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
Tel: (770) 427-5600
Fax: (404) 601-1855

James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
Tel: (404) 373-1970

**BURKE LAW OFFICES, LLC**
Alexander H. Burke, *pro hac vice forthcoming*
909 Davis Street, Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com

*Attorneys for Plaintiff*